IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **VALENCIA GARY, Administrator of the Estate of Jerry Butts,** | : : : | |
| **Plaintiff** | : : | |
| v. | : : | 5:03-CV-337 (WDO) |
| **SHERIFF JERRY MODENA, et al.,** | : : | |
| **Defendants** | : | |

### ORDER GRANTING SUMMARY JUDGMENT

On October 16, 2001 at approximately 10:00 a.m., Jerry Butts was arrested at his home for probation violations. After the arresting officers took Butts by his mother's house to inform her of Butts' arrest, the officers transported Butts to the Bibb County Law Enforcement Center (hereinafter "LEC").[1] During the course of booking Butts, Officer Hilliard completed an intake screening form that is used to determine if an inmate is currently experiencing any physical or mental condition for which he or she needs to be treated immediately or in the near future. One of the questions on the form is whether Butts was unconscious or showing visible signs of illness, injury, bleeding, pain or other symptoms that would suggest the need for immediate emergency medical referral. Question 18 asked, "Do you suffer from: Shortness of breath, cough, abdominal pains or chest pains?"[2] Butts circled "chest pains," and also indicated on the

---

[1] Ms. Reed did not speak to Butts at the time because he remained in the vehicle while the officers informed Ms. Reed that Butts was being taken to the LEC. Reed Dep. at 15-16.

[2] R. at 105, Ex. C.

1

form that he had been treated for a heart condition and high blood pressure, that he had attempted suicide three years previously and that he used alcohol daily. Officer Hilliard's portion of the form indicated that Butts was conscious, not showing any visible signs of illness or injury or any other symptoms suggesting the need for immediate medical attention. Hilliard also indicated that Butts appeared to be under the influence of alcohol.[3] Butts told Officer Hilliard that he took medication but was unable to identify any specific medications. After Butts was booked, Hilliard released him into the general population of the jail and placed the screening form in the basket for the medical personnel. The infirmary nurses picked up the screening forms every couple of hours and determined whether the answers to any of the questions necessitated an immediate examination or whether the inmate could be examined later. Pursuant to LEC policy, Officer Hilliard would not have allowed Butts to be placed in the general inmate population if Butts was showing signs of illness or injury.[4]

During the time in question, Bibb County and Sheriff Modena were operating the medical facility at the LEC pursuant to a contract with Defendant Prison Health Services (hereinafter "PHS"). PHS was paid to provide staffing and medical services for the LEC with the exceptions of initial inmate screenings and the retainer of Defendant Sandra White, a nurse in the LEC infirmary but a Bibb County Sheriff's Department employee.[5]

---

[3] Butts allegedly told his cellmate David Lucas that he had 2 or 3 beers the morning before his arrest. Lucas Dep. at 63.

[4] Hilliard Dep. at 26, 55-56, 91-92, 103.

[5] The parties addressed the issue of whether White was a Bibb County or PHS employee. Based on the facts presented, White was clearly a Bibb County Sheriff's Department employee. She was paid by the Sheriff's Department and received location assignments from the Sheriff's Department. Only the Sheriff could terminate her. In fact, PHS did not even set White's work schedule. In 1997 when PHS came on board, White retained her previous schedule and nurses thereafter hired by PHS were scheduled by PHS. However, PHS did give White her daily task assignments. Nevertheless, this issue is not dispositive of any issue decided by the Court in this order.

On October 16, the date of Butts' arrest, Defendant Sandra White was a nurse in the LEC infirmary. She was assigned to pick up the screening forms from booking and ask the inmates any necessary follow-up questions regarding their responses to the forms. When Nurse White picked up Butts' form, she noticed that several responses were "yes" and that she needed to speak to Butts about his condition. At approximately 2:00 p.m., Nurse White spoke to Butts and indicated that she needed to examine him but that she had other inmates to which she needed to tend who had current, pressing medical needs. Butts did not at the time appear to be suffering from any type of medical illness or injury and did not complain of any. When Nurse White attempted to see Butts later in the day, she learned that Butts had been moved to South Control where inmates are allowed to visit with attorneys, probation officers, etc. It is unclear whether he was actually in South Control but Nurse White was of the opinion that he was in South Control at the time. Although she made several attempts, White was unable to see Butts the day he was booked due to a doctor's appointment of her own for which she left work at 4:00 p.m. White testified that she informed Nurse Rosemarie Davis that she had been unable to see Butts and left his screening form on Nurse Davis' desk. Nurse Davis denies being informed that White had been unable to see Butts or informed by anyone that Butts was experiencing any type of illness.[6]

On that same day, between 1:00 p.m. and 3:00 p.m., Mary Lou Rhodes, Butts' girlfriend of twenty years, Marcia Mathis, Butts' sister, and Plaintiff Valencia Gary-Riddeaux, Butts' daughter,[7] went to the LEC and allegedly informed a deputy in the visitation area that Butts was

---

[6] White Dep. Vol. I at 82-88, Vol. II at 33-35, 45, 56.

[7] There was some dispute over whether Plaintiff could bring this action because she is Butts' illegitimate daughter. However, pursuant to O.C.G.A. § 51-4-2(f), in wrongful death actions the fact that a child has been born out of wedlock shall be no bar to recovery. Plaintiff Gary, her grandmother, her aunt and Butts' girlfriend of 20 years testified that Plaintiff was Butts' daughter and that Butts acknowledged Plaintiff as his daughter. Gary Dep. at

on medication for a heart condition and asked if they could bring Butts' medication back to the LEC.  Mathis and Rhodes contend the deputy refused to take the medication and explained that the LEC infirmary would examine Butts and determine if he needed any medication.[8]  There is no evidence that Mathis, Rhodes or anyone else ever went back to the LEC with the medication or followed up with the infirmary regarding the medication.

The jail's policy on receiving medication was that the deputies did not have the discretion to turn away medication but were to notify medical personnel if someone brought medication to the jail for any reason.  Deputies were occasionally sent to an inmate's house to procure medication if medical personnel determined it was needed immediately.  Otherwise, the deputies were instructed to let the medical personnel handle inmates' medical needs.[9]

After the booking process was complete, Butts was assigned to the F-Wing, a minimum security block where the cell doors do not lock and the inmates are able to move around the block freely other than at shift change and "lock down" when they went to bed.  The F-Wing is arranged in a dormitory fashion with a common room and cells along the outer walls housing two inmates each.  The control booth is in the middle of the dormitory and is made of glass on all four sides.  The control booth extends upward through the second floor to provide viewing from the control booth of the second floor inmates.

During the late afternoon or evening of October 16, Butts' cellmate, David Lucas, placed a "sick call" request in the designated box for Butts.  The sick call request stated only that Butts

---

6; Rhodes Dep. at 14-15.  For purposes of this order, the Court will accept Plaintiff as the proper party to bring this "wrongful death" suit.

[8]R. at 105, Ex. Q.

[9]Shepherd Dep. at 47, 49, 61; Moseley Dep. at 9; Collins Dep. at 74; Davis Dep. at 45, 54, 65.

was experiencing swelling in his feet and ankles.[10]  Lucas did not tell any officer or nurse that Butts was experiencing any type of illness or injury.  Although Lucas dated the sick call request "10/16/01" at 6:10 p.m., the form is file stamped "OCT 17 2001."[11]

Throughout the evening of October 16 and morning of October 17, there were several shift changes, block checks and medical calls or "pill calls" at which time various jail and medical personnel were able to observe each inmate.  There was a shift change at 6:45 p.m. on the 16th after which there was a block check.  There were also block checks at midnight and 2:00 a.m.  During block checks, deputies verified the inmate count by going to each cell and observing the inmates.  Breakfast "chow call" took place at 3:45 a.m.  An infirmary call took place at 4:30 a.m.  The night shift performed a final block check at 6:00 a.m. before they were relieved at 6:45 a.m.  At no time during any of these block checks, shift changes and medical calls did Butts, Lucas or any other inmate indicate to any officer or medical personnel that Butts was experiencing any type of medical problem for which he needed medical attention.

On the morning of October 17, Defendants Lawrence and Cleveland were assigned to work in the F-Wing.  When they arrived for work at 7:00 a.m., Butts was sleeping on the floor of the common room where the television was located.  Cleveland approached Butts, asked him why he was on the floor and ordered him to return to his cell.  Cleveland was informed by another inmate that Butts was an alcoholic and had come in the night before.  The officers testified that Butts woke up and responded to them in a manner like anyone having just awakened would have responded, very drowsily.  Lucas then came out of the cell and walked

---

[10]R. at 105, Ex. D.

[11]Lucas Dep. at 23.

Butts back to the cell but told Lawrence that Butts was "fine." There was testimony by some of the officers that inmates often fall asleep on the floor, tables and benches watching television in the common room. However, there was also testimony that inmates were required to sleep in their cells. As Butts was walking back to his cell, Cleveland called Nurse Davis in the infirmary and told her that an inmate who had been sleeping on the floor would be sent to the infirmary after he woke up later in the morning. Cleveland did not tell Davis that Butts was experiencing any type of current symptoms that needed attention at that time. Nurse Davis does not recall Officer Cleveland calling her that day about an inmate sleeping on the floor.[12]

At approximately 2:50 p.m., Lucas noticed that Butts had fallen out of bed and alerted the deputies in the control room. The deputies immediately called the infirmary.[13] Nurses Davis and White responded in just a few minutes to the "man down" call and began to administer CPR while the EMTs were called. Butts was pronounced dead on arrival at the hospital. The Coroner certified the cause of death as "dilated cardiomyopathy due to hypertension."[14]

Butts' sister, daughter, mother and girlfriend provided testimony about Butts' medical and other personal history. According to them, Butts had consistently refused to comply with his doctors' orders regarding taking his medications regularly and limiting his alcohol intake but that he had taken his medication on the day of his arrest. There was also testimony that Butts drank at least a pint of gin a day.[15]

---

[12] Lucas Dep. at 42; Lawrence Dep. at 77; Cleveland Dep. at 43-47, 72.

[13] Lucas Dep. at 34.

[14] R. at 105, Ex. R.

[15] Rhodes Dep. at 46-48; Mathis Dep. at 26.

Plaintiff, as administrator of Butts' estate, filed the instant case against Sheriff Modena, the officers who were on duty while Butts was incarcerated, the medical personnel on duty at the time, the medical director and PHS.[16]  Plaintiff alleges violations of federal and state law.[17]  Plaintiff contends that, as a result of Butts not receiving a follow-up medical screening after his initial intake screening, Butts did not receive his medications on the morning of October 17, 2001.  Plaintiff contends that the failure to receive his medication and to be further examined by medical personnel resulted in Butts' death.

Defendants filed motions to dismiss based on qualified immunity.  After holding a status conference, the Court determined that further discovery was needed before a decision could be made based on the allegations and facts presented at the time.  Therefore, although questions of qualified and other forms of governmental immunity are generally addressed at the earliest possible stages of litigation, after a review of the record the Court determined that this case could not be decided on motions to dismiss and ordered the parties to conduct discovery.

Because Plaintiff alleges a deprivation of medical care and wrongful death caused by the Defendants, the Court must, after construing all facts in the Plaintiff's favor, determine whether a genuine issue of material fact exists as to whether the Defendants' actions constituted deliberate indifference to Butts' serious medical needs.  Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996)

---

[16] Plaintiff later voluntarily dismissed Defendants Nelson, Gunnells and Joiner and the punitive damages claims against Defendants Collins and Boatright.

[17] For purposes of this case, all of the Defendants were acting "under color of state law" in the performance of their various duties that serve as the basis for Plaintiff's claims.  See Hinson v. Edmond, 192 F.3d 1342 n.5 (11th Cir. 1999) (citing West v. Atkins, 487 U.S. 42, 108 S. Ct. 2250 (1988); Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir.1985)).

.

(quoting Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976)).  "And since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 840, 114 S. Ct. 1970, 1979 (1994); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (acknowledging Farmer's requirement of subjective awareness and rejection of a solely objective test of deliberate indifference)).

Because Butts was a pretrial detainee, Plaintiff's claims properly lie under the Fourteenth Amendment but may nonetheless be analyzed under the Eighth Amendment's deliberate indifference standards.  McDowell v. Brown, 392 F.3d 1283 n.8 (11th Cir. 2004).

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This approach comports best with the text of the Amendment as our cases have interpreted it.

Farmer, 511 U.S. at 837-38 (citing Prosser and Keeton §§ 2, 34, pp. 6, 213-214; Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; United States v. Muniz, 374 U.S. 150, 83 S. Ct. 1850 (1963)).  "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."  Farmer, 511 U.S. at 844.  It is well settled that medical malpractice is insufficient to form the basis of a claim for deliberate indifference.  Hinson v. Edmond, 192 F.3d 1342, 1345

(11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-07, 97 S. Ct. 285, 292 (1976); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir.1995)).  "Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless."  Id. (citing Farmer, 511 U.S. at 833-38; Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996)).  Although a delay in treatment can, depending on the circumstances and the length of the delay, constitute deliberate indifference, Plaintiff must show sufficient evidence to create a material issue of fact about whether any of the Defendants knew of Butts' serious medical condition and, intentionally or with reckless disregard, delayed treatment.  Harris v. Coweta County, 21 F.3d 388, 394 (11th Cir.1994) ("knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference"); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir.1986) ("Mere negligence or malpractice does not violate the eighth amendment.").

     Plaintiff's expert Dr. Daniel Byrd opined that the medical personnel on duty at the LEC during the time of Butts' incarceration "failed in their duty to provide or to arrange to have provided timely medical screening, evaluation and treatment to JERRY BUTTS upon his arrival at the Bibb County Jail with a known history of high blood pressure and a heart condition requiring prescription medications ordered by other physicians, and voicing complaints of chest pains while exhibiting visibly swollen feet and ankles."[18]  Dr. Byrd further stated that the medical personnel failed to perform adequate intake medical screening to determine Butts' medical needs, failed to provide Butts with prescription medications needed to treat his heart condition and failed to allow Butt's family to provide the medications.  Finally, Dr. Byrd opined that the

---

[18] R. at 105, Ex. B.

medical director of PHS failed to implement policies that would insure reliable, safe and effective medical care to inmates. Dr. Byrd would not state with certainty however that if Butts had received his medication on the date of his death the death would have been prevented.[19]

The intake medical screening form used by the booking officers was sufficient to alert the officers and medical personnel of any medical or psychological problem Butts was experiencing at the time of booking. The questions answered by the booking officer are ones that require a common sense understanding of whether the person sitting in front of the officer is exhibiting physical manifestations of an emergency medical or psychological condition.[20] In this case, nothing in Butts' behavior or appearance alerted the booking officer or the medical personnel who received the form of there being an emergency medical condition.

There is no evidence that any of the Defendants' actions constituted deliberate indifference to Butts' serious medical needs. Nothing whatsoever has been placed into evidence that shows any of the Defendants had a subjective awareness of any risk to Butts. Defendants cannot be held liable under the Eighth or Fourteenth Amendment for denying Butts humane conditions of confinement because no one knew of and disregarded an excessive risk to Butts' health or safety. There is no evidence that Butts complained to any of the Defendants about feeling weak or out of breath or that he experienced any other symptom of a serious medical problem. None of the other inmates alerted the officers or nurses to Butts being seriously ill. The Defendants' failure to alleviate a significant risk that they should have perceived but did not cannot in this case be condemned as the infliction of punishment. Defendants have shown that

---

[19] Byrd Dep. at 86-87.

[20] Lawrence Dep. at 37.

they did not know of any underlying facts indicating a sufficiently substantial danger to Butts and were therefore unaware of any danger to him.  Further, Plaintiff has presented no evidence to support a conclusion that any harmful acts on the part of any of the Defendants were intentional or reckless.  Plaintiff's claims are essentially those of medical malpractice which is insufficient to form the basis for a deliberate indifference claim.  Although a delay Butts' treatment could have constituted deliberate indifference under facts different from those presented herein, Plaintiff failed to present sufficient evidence to create a material issue of fact about whether any of the Defendants knew of Butts' serious medical condition and, intentionally or with reckless disregard, delayed treatment.

Plaintiff's interpretation of "deliberate indifference" would impose upon the Defendants an obligation of prescience because Butts was incarcerated at the time of his death.  This is not required by the United States Constitution, or any other federal or state law.  Rather, in carrying out their duties as deputies and medical personnel of the Bibb County LEC, the Defendants were required to insure that the conditions at the jail were humane, satisfied basic standards of decency and were such that a *known* serious medical condition would be treated.  These obligations were satisfied by the Defendants in relation to Mr. Butts.  There were numerous policies and procedures in place that insured someone coming into the jail with a present physical manifestation of a serious illness would be treated.  Mr. Butts simply did not exhibit any physical manifestation of any type of serious illness until he collapsed on the floor moments before his death.  At every point in the brief time that Mr. Butts was in the LEC the procedures in place to protect him were followed.  Perhaps there are many ways in which someone else could have done a better job with booking and tending to the medical needs of inmates but that is not for this

Court to decide.  This Court's jurisdiction is over matters that result from deliberate indifference to an inmate's serious medical needs.  There is no evidence that any of the Defendants exhibited a deliberate indifference to a known serious medical need in the case of Mr. Butts or that any policy, procedure, custom or practice of PHS or the Sheriff's Department was the cause of or contributed to Butt's death.

Based on the foregoing, Defendants' motions for summary judgment are GRANTED as to the Eighth and Fourteenth Amendments "deliberate indifference" claims.  Because the only federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims.  <u>See</u>  28 U.S.C. § 1367(c)(3) (2000).  Plaintiff's state law claims are therefore dismissed without prejudice.  Any other pending matter is dismissed as moot.

**SO ORDERED this 18th day of November, 2005.**


**S/Wilbur D. Owens, Jr.**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**